(78 App. Div. 324.)

## McEVOY v. LOMMEL.

(Supreme Court, Appellate Division, First Department.   January 16, 1903.)

1. MEDICAL BOOKS—ADMISSIBILITY IN EVIDENCE.

In an action for personal injuries it was error to permit defendant to read in evidence extracts from a standard medical book, and this though the matter contained in the book had been in some respects the subject of examination by plaintiff as a part of her affirmative case, and though defendant had a right to cross-examine the physician who testified on such subject with respect thereto, it appearing that he did not do so, but that he attempted to read the extracts as a part of his affirmative case.

2. SAME—AVAILABLE ERROR.

The error was available, there having been other error committed in respect to the primary questions of negligence and contributory negligence.   Per Hatch and Patterson, JJ.

Appeal from trial term, New York county.

Action by Eleanor McEvoy, by her guardian, against Lawrence C. Lommel.   From a judgment in favor of defendant, and from an order denying a motion for new trial, plaintiff appeals.   Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Roger Foster, for appellant.
Edwin A. Jones, for respondent.

HATCH, J.   By this action damages are sought to be recovered for injuries sustained through the claimed negligent acts of the defendant.   The plaintiff at the time of receiving the injuries was an infant of about five years and seven months of age.   She was playing with some other children upon the street in front of the premises occupied by her parents in West 118th street, between Eighth and St. Nicholas avenues, in the city of New York.   While so playing she stepped into the street about a foot and a half from the curb, and was there run down by a butcher's wagon, owned by the defendant and driven by a boy of about seventeen years of age, and sustained the injuries of which complaint is made.   The testimony upon the part of the plaintiff tended to establish all of the elements entitling the plaintiff to recover damages.   The defendant, however, controverted the case as made by the plaintiff, and gave evidence in exculpation from liability.   Upon this conflicting testimony the jury found a verdict in favor of the defendant, and such verdict may not be disturbed upon the facts.   By this appeal the plaintiff presents certain claimed errors in the rulings of the trial court, which he insists calls for a reversal of the judgment.

After the close of the defendant's proof, the plaintiff recalled the boy who drove the wagon, and interrogated him for the purpose of laying a foundation for giving rebuttal testimony, and also to procure from him an admission of certain statements inconsistent with his direct testimony, or, if not admitted, to lay the foundation for impeaching testimony.   Being upon the stand, he was asked if he saw Mr. Williams, a witness for the plaintiff, some time after the accident, and admitted that he had.   He was then asked:   "Q. Did you not at that.

¶ 1. See Evidence, vol. 20, Cent. Dig. §§ 1517, 2380.

time ask him how the child was injured, and ask him to point out to you where the child was standing when the child was injured? A. No, sir; I did not." "Q. Did you not then say that you didn't see the child and didn't know how the matter occurred? A. No, sir; I didn't say one word to the gentleman." For the purpose of contradicting this witness upon such subject, Williams, the witness with whom the claimed conversation was had, was recalled, and asked to state what the boy said to him, and answered such question, stating, in substance, that he asked, " 'How did I do this accident? How did I run over the child?' He said, 'I didn't see it;' " to which the witness replied, "I said, 'I know very well you didn't see it, because you were looking towards Eighth avenue.' He thanked me and walked out." "He said it was an accident, and I said, 'I know that, too.' " He was then asked, "What, if anything, was said about the location where the child was standing? A. And he says, 'Where was this child standing?' " The witness having answered thus far, counsel for the defendant said, "I object to that as not rebuttal." Plaintiff's counsel then said: "I asked him this morning. That is what I recalled the boy for." The court sustained the objection, to which the plaintiff took an exception. The subject-matter of the testimony thus sought to be elicited was material to the issue. Upon the direct examination the boy who drove the wagon testified that the child ran from the sidewalk into the street immediately in front of the front wheel of the wagon; that he turned this wheel out of the way, but was unable to stop, and the hind wheel passed over the child. The statements claimed to have been made by him subsequent to the action, and to which his attention had been directed, bore directly upon such question; and if the jury believed that after the accident he had made statements showing that he did not see the child, and did not know where she was standing in the street, at the time the wheel struck her, it would seriously impair his credibility, and furnish a basis for the rejection of his entire testimony bearing upon that subject. The testimony which he gave tended to excuse him of any negligence in the management of the horse and wagon. The subsequent statement which was sought to be established directly and forcefully contradicted his testimony in this respect. It was competent testimony, and the method to elicit it was proper. Patchin v. Insurance Co., 13 N. Y. 268; Sloan v. Railroad Co., 45 N. Y. 125; Stape v. People, 85 N. Y. 390; Jamieson v. Railway Co., 11 App. Div. 50, 42 N. Y. Supp. 915.

It is said, however, that the question propounded by the plaintiff was not the same question which was asked of the driver of the wagon. A comparison of the two questions which we have quoted shows that with respect to the location of the child at the time of the injury the question is quite similar, and exactly so as to where the child was standing. In substance the question is the same in this respect as was propounded to the driver. It was not claimed upon the argument, nor in the brief submitted by the respondent, that any doubt could arise, but that the evidence sought to be thus elicited was called to the attention of the driver; that he understood it, and that if there was any change it was technical, in the use of words which did not materially change the form or substance of the question, and certainly

did not mislead or inject any foreign matter into the substance of the evidence which was sought to be obtained. The testimony being competent and proper, and the question propounded being in substance the same as that to which the driver's attention had been directed, it answered the requirements of the rule governing such matter. In Bank v. Koehler (Sup.) 1 N. Y. Supp. 870, affirmed on appeal, 117 N. Y. 657, 22 N. E. 1133, it was said by the presiding justice in considering a similar question:

"A party has a right upon cross-examination of a witness contradicting another in regard to the language used by him to use the language which has been before testified to, or the substance thereof, in the putting of the question in answer to which the contradiction is expected."

Such is the rule of the authorities. Shufflin v. People, 4 Hun, 16; Kinner v. Canal Co., 52 N. Y. Super. Ct. 162; Sloan v. Railroad Co., supra; Church v. Sheffer, 88 Hun, 335, 34 N. Y. Supp. 724. In addition to this it is to be observed that no such objection as is now suggested was raised upon the trial. Had it been so raised, the plaintiff might have obviated the same by putting his question in the precise language which had been propounded to the driver, or by recalling him and propounding to him the precise question which had been asked of the witness. The defendant, not having taken any objection on this ground, must be held to have waived it. Height v. People, 50 N. Y. 392; Murphy v. People, 63 N. Y. 590; Schermerhorn v. Gregg, 55 N. Y. 670. It would seem to follow, therefore, that the plaintiff became entitled to have this question answered, and that its exclusion constitutes reversible error.

Error was also committed in permitting the defendant to read in evidence extracts from a standard medical work. It is quite true that the matter contained in the book had been in some respects the subject of examination by the plaintiff as a part of her affirmative case. The defendant undoubtedly had the right to cross-examine the physician, who testified upon such subject with respect thereto. This, however, he did not do so far as the particular matter contained in the book was concerned. What he did do was to introduce in evidence, as a part of his affirmative case, matter contained in the book by reading therefrom, after the plaintiff's expert had been examined, and when the subject-matter of the examination had entirely passed. It was not cross-examination, but affirmative proof, and as such was incompetent. Foggett v. Fischer, 23 App. Div. 207, 48 N. Y. Supp. 741. Of course, this error would not be available had no error been committed in respect of the primary questions of negligence and contributory negligence and the conduct of the trial in relation thereto; but, as we have seen, error was committed in the consideration of such question, in consequence of which this error is also available.

If these views be correct, it follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

PATTERSON, J., concurs. VAN BRUNT, P. J., concurs on last ground stated.

LAUGHLIN, J. (dissenting). This is an action to recover damages sustained by the plaintiff, an infant five years of age, alleged to have been caused through the negligence of the driver of the defendant's butcher wagon. The evidence presented a fair question of fact for the consideration of the jury upon both questions of negligence. The questions presented on the appeal requiring consideration are two exceptions to the evidence. One Williams was a witness for the plaintiff. The driver of the butcher wagon was asked if he saw Williams some time after the accident, and, upon his answering in the affirmative, was then asked, "Q. Did you not at that time ask him how the child was injured?" to which he replied, "No, sir; I did not." He was then asked, "Q. Did you not then say that you did not see the child and did not know how the matter occurred?" to which he replied, "No, sir; I did not say one word to the gentleman." For the purpose of contradicting the driver who had given material testimony as to how the accident occurred, Williams was then recalled, and asked to state what the driver said to him. No objection was interposed to this question, and he answered that the driver said to him, in substance, " 'How did I do this accident? How did I run over the child?' He said, 'I did not see it.' " The witness testified that he replied to the driver, "I know very well that you did not see it, because you were looking towards Eighth avenue;" whereupon, according to his testimony, the driver thanked him and walked out. He further testified that the driver said, " 'It was an accident;' and I said, 'I know that too.' " Williams was then asked, "What, if anything, was said about the location where the child was standing?" to which he started to reply, "A. And he says, 'Where was this child standing—' " whereupon counsel for the defendant interposed an objection upon the ground that the evidence was not in rebuttal. The court sustained the objection, and the plaintiff excepted. The specific objection interposed was not well founded, for manifestly evidence tending to impeach a witness for the defendant could only be given in rebuttal. The validity of the exception does not depend upon the ground of the objection, but upon the competency of the evidence which was excluded by the court. If the question was merely improper in form, or if a foundation had not been laid, probably its exclusion could not be sustained, inasmuch as no specific objection to that effect was taken. But this question called for the conversation; and such evidence, for the purpose of impeaching a witness, is clearly incompetent, and no foundation or change in the form of the question would make it competent. The court is vested with considerable discretion with reference to the extent to which an examination will be allowed for the purpose of impeaching a witness for declarations inconsistent with his testimony. The general rule is that the attention of the witness who is sought to be impeached should be specifically drawn to the time and place of the interview, and the statement claimed to have been made which is inconsistent with his testimony, and that the examination of the impeaching witness should be confined substantially to the statements embraced in the questions to the witness whose testimony

it is sought to impeach. Bailey, Tr. Prac. (2d Ed.) 275, 276; Sloan v. Railroad Co., 45 N. Y. 125. Here it will be seen that the plaintiff received more than she was entitled to. The witness was first permitted to give all of the conversation that he could collect without leading questions being propounded to him. This manifestly was not proper, and should have been excluded if objected to. The declarations of the witness are not evidence, and they are only permitted to be shown for the purpose of contradicting him. Hence it is that the contradiction should be confined to the statements or declarations, or to the substance thereof, to which his attention was specifically drawn. If this rule were not followed, and the conversation were admitted, other statements and declarations of a prejudicial character might be brought before the jury; and it would be difficult, if not impossible, for the court to make it clear to them that the conversation was not evidence, but was merely permitted for the purpose of contradicting the witness. If the contradiction is confined to the statements or the substance of the statements to which the attention of the witness has been called, the jury will readily understand that the sole point and object of the evidence is to contradict the witness. The driver said that he had no conversation with the impeaching witness. That was contradicted by showing that he had a conversation. The driver was asked if he did not say to the impeaching witness that he did not see the child and did not know how the accident occurred. If the impeaching witness had been asked, "Did not the driver say to him that he did not see the child and did not know how the accident occurred?" and he had answered, "Yes," this would have contradicted and have tended to impeach the driver. The driver was asked if he did not ask the impeaching witness how the child was injured, and ask him to point out where the child was standing. If the impeaching witness had been asked whether or not this was so, and he had answered in the affirmative, that also would have tended to contradict and impeach the driver. These are the only particulars of the alleged conversation to which the attention of the driver was drawn, and the examination of the impeaching witness should have been confined to these matters or their substance. The question which the witness was precluded from further answering called for the entire conversation, including the statements made by the impeaching witness as well as by the driver with reference to where the child was standing. Moreover, the plaintiff was not prejudiced, for the question was sufficiently answered to show that if the testimony of the impeaching witness was true the driver did not know where the child was standing, and the other witness, received without objection, sufficiently covered the ground.

The other objection urged relates to an error in permitting the defendant to read in evidence extracts from a standard medical work. This bore only on the question of damages. There was no controversy but that the child was injured, and there is no reason to believe that the verdict of no cause of action was rendered on the theory that no damages were sustained. The evidence erroneously received had no tendency to contradict or impeach any witness who

testified upon the main issue. Consequently, the jury having found that the plaintiff was not entitled to recover, the admission of this evidence was not reversible error.

It follows that the judgment should be affirmed, with costs.

INGRAHAM, J., concurs.